**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN  DIVISION**

**WILLIAM E. JONES, III**                                             **PLAINTIFF**


**VS.**                          **CASE NO. 4:05-CV-01325 GTE**


**JIM REEDER, individually, and in his**
**official capacity as Sheriff of Perry County,**
**Arkansas; RANDY WILSON, individually,**
**and in his official capacity as Chief of Police**
**of the City of Perryville, Arkansas; and**
**BOB SATKOWSKI, individually, and in his**
**official capacity as an employee of the**
**Arkansas Law Enforcement Training Academy**                        **DEFENDANTS**


<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court are three Motions for Summary Judgment, one filed by each Defendant in this case.  Also pending is a Motion for Relief to Certify a question to the Arkansas Supreme Court filed by Plaintiff William E. Jones ("Jones").

For the reasons stated below, the Court concludes that Defendants Randy Wilson ("Wilson") and Bob Satkowski ("Satkowski") are entitled to judgment as a matter of law on all of Plaintiff's claims against them.  Defendant Jim Reeder is entitled to judgment as a matter of law on all of Plaintiff's federal claims against him except for the First Amendment retaliatory discharge claim.  The Court retains that claim for trial.  Plaintiff may also pursue at trial the Plaintiff's claim that his termination violated the Arkansas Civil Rights Act ("ACRA").[1]  The Court declines to exercise jurisdiction over Plaintiff's claim that Reeder violated the ACRA

---

[1] The Court notes the possibility that it may decline to exercise jurisdiction over the ACRA claim, as both Reeder and Plaintiff have requested, if the federal claim based on the same factual scenario is dismissed prior to trial.

when he distributed the NCIC Report.[2]

## SUMMARY JUDGMENT STANDARD

Summary judgment should be entered if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986). A genuine issue of material fact exists only if there is sufficient evidence from which a jury can return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

## FACTS WITHOUT MATERIAL CONTROVERSY

Plaintiff has sued the following Defendants:

(1)     Jim Reeder, as the Sheriff of Perry County, Arkansas;
(2)     Randy Wilson, Chief of Police for the City of Perryville, Arkansas;
(3)     Bob Satkowski, Deputy Director for the Arkansas Law Enforcement Training Academy.

All Defendants are sued in both their individual and official capacities.

Plaintiff Jones served for a period of five years as the former chief deputy for the Perry County Sheriff's Department ("PCSD"). It appears that at all times relevant to this case, Plaintiff served under Sheriff Ray Byrd. In 2003, Sheriff Byrd decided to retire and not to run for reelection in 2004.

Plaintiff Jones, Separate Defendant Jim Reeder ("Reeder") and Joey Cannnon were all candidates in the 2004 democratic primary for Sheriff of Perry County, Arkansas. Reeder won

---

[2] Reeder elected not to address this claim in his summary judgment motion. Both Reeder and the Plaintiff requested that the Court decline to exercise subject matter jurisdiction over any supplemental state law claims. The Court believes the issues related to Reeder's termination and the alleged wrongful dissemination of the NCIC report are severable. Accordingly, the Court will decline to exercise jurisdiction over the latter ACRA claim against Reeder.

the primary and faced no republican opponent in the November general election.   Byrd ran

against Reeder as a write-in candidate, but Reeder won the general election.  Consequently,

Reeder was the sheriff-elect from November 2004 through the end of 2004.

Plaintiff claims that following the election, he ran into Reeder at a local gas station.

Reeder is alleged to have told Plaintiff that he was disgusted with Plaintiff and that Plaintiff

would not be allowed to retain the position as chief deputy.  Later, Plaintiff agreed to allow Byrd

to lay him off prior to Reeder actually assuming office.  Viewing the facts in a light most

favorable to Plaintiff, the Court accepts for purposes of this motion that Plaintiff believed that he

would not be retained in the Chief Deputy position based on Reeder's comments at the gas

station and that his job was "no longer there."[3]

In December of 2004, following his "resignation" from the chief deputy position, Plaintiff

applied for a school resource officer position.  In June of 2005, Plaintiff applied for a position

with the UALR Police Department.  He did not get either job.  Plaintiff contends that an NCIC

record contained in his PCSD personnel record kept him from being considered for both

positions.  Plaintiff contends that the NCIC record is false because it can be read to indicate that

Plaintiff was been convicted and served jail time for grand larceny, a felony, when in fact, he was

only arrested for the crime.

Although the record supports Plaintiff's contention that he was not interviewed for the

school resource officer position because of the NCIC record, it does not support the contention

that he was not interviewed for the position with the UALR Police Department because of the

NCIC record.

What the parties refer to generically as the "NCIC record" throughout the summary

---

[3]  (Jones deposition, p. 19, Exh. A to Pl.'s Stmt. of Facts, docket # 42).

judgment submissions is actually an FBI Identification Record.  The record reads in pertinent

part:

| NAME | FBI NO. | DATE REQUESTED |
|------|---------|----------------|
| JONES, WILLIAM ERVIN | . . . . | 2001/11/01 |

FINGERPRINT CLASS          PATTERN CLASS    . . .

. . .

1-ARRESTED OR RECEVIED 1966/06/01
    AGENCY - SHERIFF'S OFFICE CONWAY (AR0230000)
    CHARGE 1 - GRAND LARCENY

  COURT -
   CHARGE – GRAND LARCENY
   SENTENCE -
   COUNTY JAIL

RECORD UPDATED 2001/11/01

(NCIC Report or FBI Identification Record, Exh. H to Satkowski's brief, docket 25).

It is undisputed that in 1966, when Plaintiff Jones was 17 years old, he was arrested and

charged with grand larceny for stealing four tires off a car.  Although Plaintiff was taken to jail

following his arrest, he was never convicted.[4]

The FBI Identification Record indicates that the information was requested on April 17,

2001, but does not indicate who requested it.  The record does not indicate how or why this

record came to be placed in Mr. Jones' personnel file.   There is no evidence to suggest, and there

has been no allegation, that any of the Defendants in this case caused the FBI Identification

Record to be placed in Plaintiff's personnel file.

Plaintiff Jones learned about the NCIC record in question in 2003, while attending an

---

[4]  Plaintiff apparently was taken to jail following his arrest.  The summary judgment
record does not indicate how the charge was disposed of, but the parties apparently agree that
Plaintiff was not convicted of the crime.

instructor development course at Black River Technical College in Pocahontas.  After learning

about the record, Plaintiff asked then Sheriff Byrd to investigate.  Byrd contacted officials in

Faulkner County, the county of origin for the charges on the NCIC record – and these officials

informed Byrd they had no record of the charge.  The Faulkner County officials confirmed that

there was no record of Jones' conviction by letter.  This letter was also placed in the Reed's

personnel file.

 Byrd ordered George Cossey, a criminal investigator with the Perry County Sheriff

Department ("PCSD") who had discovered the record, to remove the NCIC record from Plaintiff

Jones' PCSD personnel file.  However, Cossey failed to follow Byrd's orders, and the FBI record

remained in Jones' personnel file.  Jones believed the issue had been resolved, but there is no

evidence that he took any action to ensure that the FBI record had been removed from his file.

 On or prior to December 10, 2004, Jones applied for the position of school resource

officer[5] with the City of Perryville.  Jones applied for this position through Separate Defendant

Randy Wilson, Perryville's Chief of Police.  In his application, Plaintiff signed an "Employee

Statement."  The Employee Statement specifically authorized Plaintiff's former employers "to

release to the City of Perryville, AR or its authorized representative any and all employment

records and other information it may have about my employment."  Plaintiff also acknowledged

that such information "would be used for the purpose of evaluating" [Plaintiff's] application for

employment with the City."[6]

 In December of 2004, as part of the process of evaluating Plaintiff's application for the

school resource officer position, Defendant Wilson obtained a copy of Plaintiff's PCSD

---

[5]  A school resource officer is a police officer assigned to a school.

[6]  (Exh. E to Def. Sartkowski's brief, docket 25).

personnel file.  While reviewing the file, Wilson noticed the document reflecting the grand

larceny charge and he interpreted it to mean that Plaintiff had served jail time.[7]  In response,

Wilson contacted Plaintiff and met with him concerning the arrest report in his personnel record,

advising Plaintiff it might be problematic for his application.  During the meeting, Plaintiff

admitted to Wilson that he had "stole some tires" and that was why he was arrested for Grand

Larceny.  Wilson gave Plaintiff the opportunity to withdraw his employment application.

Plaintiff declined because he believed that the matter had been cleared up.  Plaintiff then advised

Wilson of his belief that Sheriff Byrd had cleared the matter with "Standards."

Chief Wilson then contacted "Standards" seeking information on whether the FBI

Identification Record disqualified Plaintiff from the position.  "Standards" refers to the Arkansas

Office of Law Enforcement Standards ("AOLES").  AOELS (or Standards) is the Arkansas

agency tasked  with training and maintaining standards on individuals employed in, or seeking

employment in, law enforcement in the State of Arkansas.  Defendant Bob Satkowski is sued in

his official capacity as an employee of AOLES.[8]

Wilson claims he contacted Standards to determine whether Plaintiff was qualified to

serve as a law enforcement officer.  Plaintiff claims Wilson's real purpose was "to destroy

Plaintiff's ability to work as a law enforcement officer."  Plaintiff supports his claim of bad

motive solely with the fact that Wilson did not advise Standards of a letter in his file from

Faulkner County dated August 23, 2001, which advised that it had not been able to locate any

criminal history on the Plaintiff.  The letter, addressed to then Sheriff Ray Byrd in apparent

---

[7]  It is undisputed that this was a reasonable interpretation for Mr. Wilson to make of the document.

[8]  Plaintiff actually named Satkowski's employer as the Arkansas Law Enforcement Training Academy, but Satkowski is actually employed by AOLES or Standards.

response to Byrd's inquiry, states in pertinent part:

> Dear Ray,
>
> After a complete and exhaustive search of all records available to
> Faulkner County, our department is unable to locate any
> convictions or criminal history on the above referenced individual.

(Ex. B to Pl.'s stmt of facts, docket 42).

In response to Wilson's telephone inquiry about the record, Standards employee Brian

Marshall directed Wilson to fax the FBI Record to Standards.[9]  Mr. Wilson complied and the FBI

Identification Record then became part of Plaintiff's file maintained by Standards.  Standards has

not removed the FBI Record from its file.  Although Plaintiff has made no formal request to have

the FBI Identification Record removed from his file at Standards, Plaintiff contends that the

inclusion of this record in his officer file violates his constitutional rights.

Plaintiff testified that the FBI Identification record was deleted in January of 2005, when

Elizabeth Wise, a lawyer in Perry County, contacted the appropriate authorities on his behalf.

The FBI Identification Record in question was then deleted and any new requests for NCIC

information on Plaintiff would not have turned up the FBI Identification Record.  However, the

old FBI Identification Record remained a party of Plaintiff's record with Standards.

In June of 2005, Plaintiff applied for a position with the UALR Police Department.

UALR obtained records from Standards, as it does for every applicant.  UALR found the FBI

Record in Plaintiff's file.  Brad King testified that UALR decided not to interview the Plaintiff

because he had not been truthful on the job application.  Plaintiff answered "no" to the question,

"Have you ever been arrested or detained by the police?"[10]   The evidence is undisputed that

---

[9]  (Marshall depo. at p. 17, Exh. B to Wilson's Reply, docket # 57).

[10]  (King depo., p 12-13, Exh. B, Satkowski's brief, docket 25).

UALR rejected Plaintiff for employment not because of the FBI Identification Record, but

because Plaintiff had not been truthful on his application for employment.

## PLAINTIFF'S REMAINING CLAIMS

In responding to the motions for summary judgment, the Plaintiff has abandoned many of

the claims asserted in his Complaint.  The following claims remain:

1. **Defendant Sheriff Reeder**  -
   (A)  violation of the First Amendment for terminating Plaintiff's employment;
   (B)  violation of the 14th Amendment by violating Plaintiff's substantive and procedural due process rights;
   (C)  libel and slander
   (D) Arkansas Civil Rights

2. **Defendant Wilson** -
   (A)  violation of the 14th Amendment for violating Plaintiff's substantive and procedural due process rights;
   (B)  libel and slander
   (C) Arkansas Civil Rights

3. **Defendant Bob Satkowski** -
   (A) violation of the 14th Amendment for violating Plaintiff's procedural process rights (official capacity claim only).[11]

## DISCUSSION

After discussing general legal principles underlying the Plaintiff's constitutional claims,

the Court will address the three motions separately.

## DUE PROCESS PRINCIPLES

The Due Process Clause of the Fourteenth Amendment to the Constitution provides that

"[n]o State shall . . . deprive any person of life, liberty, or property without due process of law."

---

[11]  Although Plaintiff has not affirmatively abandoned the state law claims asserted against Mr. Satkowski, he failed to address such claims in response to Satkowski's summary judgment motion, which demonstrates as a matter of law that Plaintiff cannot prevail on the state law claims asserted against Mr. Satkowski.

U.S. Const. Amend. XIV, § 1.  It appears that Plaintiff alleges that both his rights to liberty and property have been infringed upon.

Plaintiff claims he has a protected property interest because he is a certified Law enforcement officer.  However, his status as a certified law enforcement officer has not been altered in any fashion.  Plaintiff remains a certified law enforcement and there is no indication that his law enforcement certification has been suspended, revoked, or altered by any Defendant in this case.  The Court rejects Plaintiff's contention that he has been deprived of any constitutionally protected property interest that might trigger any due process protection, substantive or procedural.

Plaintiff also claims that he has been unlawfully deprived of his liberty because he has been stigmatized by the FBI report, which falsely reflects that he was convicted and went to jail for grand larceny.  Plaintiff contends that the Defendants actions have inflicted "a stigma or other disability" impacting his employment opportunity.  "Damage to reputation alone . . . is not sufficient to invoke the procedural protections of the due process clause."  *Gunderson v. Hvass*, 339 F.3d 639, 644 (8th Cir. 2003)(*citing Paul v. Davis*, 424 U.S. 693 (1976)).   To be actionable as a protectible property interest, "loss of reputation must be coupled with some other tangible element."  *Id*.

The Eighth Circuit rejected an argument similar to Mr. Jones in *Neal v .Fields*, 429 F.3d 1165, 1167-68 (8th Cir. 2005), stating:

> Injury to reputation alone is not a liberty interest protected under the Fourteenth Amendment. *Siegert v. Gilley,* 500 U.S. 226, 233-34, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). Accordingly, **we have limited this claim to cases in which a public employer terminated an employee and published reasons for the discharge that seriously damaged the employee's standing in the community or foreclosed other employment opportunities. We further limit this claim to government accusations "so**

> **damaging as to make it difficult or impossible for the employee to escape the stigma of those charges.**" *Allen v. City of Pocahontas,* 340 F.3d 551, 556 (8th Cir.2003) (quotation omitted), *cert. denied,* 540 U.S. 1182, 124 S.Ct. 1420, 158 L.Ed.2d 85 (2004); *see Mercer v. City of Cedar Rapids,* 308 F.3d 840, 845 (8th Cir.2002) (allegations of "dishonesty, immorality, criminality, racism, and the like") (quotation omitted). Here, Neal is not a terminated public employee, nor has she suffered the arguably analogous injury of license revocation.

*Id.*, 429 F.3d at 1167 -1168 (some citations omitted)(emphasis added).

For the reasons well stated by the Defendants in their briefs, the Court concludes that the Plaintiff in this case has failed to show that any Defendant in this case deprived him of a liberty interest protected by the Fourteenth Amendment.

Plaintiff argues that the "stigma" of the FBI Identification Report will continue to haunt him throughout his career.  Neither Defendant Reeder or Wilson is responsible for the placement of the FBI Identification Report in his personnel file, so they can not be held liable for any "stigma" of such report, even assuming such "stigma" rises to the level of a constitutionally protected liberty interest.  Plaintiff has dropped any individual capacity claim against Defendant Satkowski, but claims that Standards should be held liable for its policies which prevent the removal of the FBI.

## A.    Procedural Due Process

A procedural due process claim requires a two step review.  *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).  The first step requires a showing that a plaintiff has been deprived of a protected interest – here a protected liberty or property interest. Plaintiff has failed to provide any evidence from to support a finding in his favor on this first step.   Accordingly, it is unnecessary to consider the second step of the analysis, which requires the application of a balancing test to determine whether the process provided was

fair.

It is interesting to note that Wilson actually provided Plaintiff with two of the key requirements for procedural due process – notice of the factual basis for the alleged deprivation and a fair opportunity for rebuttal. *Senty-Haugen*, 462 F.3d at 888. When asked about the record, Plaintiff admitted the conduct for which he was arrested, acknowledging that he "stole some tires." Plaintiff's admission to the conduct for which he was arrested and charged negates the assertion that he was placed in a false light by the FBI Identification Record. Plaintiff's admission that he committed the crime would appear to be just as much a negative as the record showing that he had been convicted.

In any event, the Court holds as a matter of law that Plaintiff suffered no violation of his procedural due process rights as a result of the dissemination of the FBI Identification Record.

## B.  Substantive Due Process

Even assuming that the Plaintiff had proven a deprivation of a constitutionally protected property or liberty interest, the Court rejects Plaintiff's assertion that his substantive due process rights were violated. The Defendants' conduct does not come close to meeting the Supreme Court's rigorous "shocks the conscience" substantive due process standard. *See Neal*, 429 at 1166-1167.

## DISCUSSION OF CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Plaintiff's specific allegations of wrongdoing are discussed more thoroughly in connection with each Defendant.

## A.  Claims against Defendant Sheriff Jim Reeder

Plaintiff maintains that Sheriff Reeder "violated his rights to due process and . . .

retaliated against him for running for office by firing him as Chief Deputy and providing a bad reference in the form of a 2001 NCIC printout."  (Pl.'s resp. brief, docket entry # 51 at p. 1).

The only First Amendment claim addressed by Sheriff Reeder's motion is Plaintiff's allegation that Reeder disseminated the false NCIC report to Wilson in an attempt to prevent Plaintiff's hiring in an effort to punish Plaintiff for exercising his First Amendment right to run for public office.[12]   Accordingly, the Court is unable to rule in Sheriff Reeder's favor as a matter of law on the Plaintiff's First Amendment retaliation claim for terminating his employment because the issue has not been adequately briefed.  Likewise, Reeder has not briefed the issue of whether his termination violated the Arkansas Civil Rights Act.  Both claims remain for trial.

Plaintiff's remaining claim of wrongdoing against Reeder is that Reeder violated his rights by distributing the 2001 FBI Identification Record, despite the fact that Sheriff Byrd had previously ordered it destroyed.[13]  It is misleading for Plaintiff to make the statement in this fashion.  There is no evidence to show that sheriff-elect Reeder was aware that Byrd had ordered the 2001 printout destroyed.

It is undisputed the Sheriff Reeder provided Plaintiff's personnel file to Chief Wilson at Wilson's request, pursuant to a signed release by the Plaintiff.  In responding to Reeder's statement of facts, Plaintiff admits that he has no problem with Sheriff Reeder complying with the employment record release and turning over the personnel file to Chief Wilson.

---

[12]  Because of the shotgun approach of Plaintiff's Complaint and submissions, the Court can understand why Defendant Reeder may have overlooked this issue and believed that he was addressing all of Plaintiff's claims.

[13]  (Pl.'s brief, p. 1, docket # 51)("although Sheriff Byrd had ordered the 2001 printout destroyed, Reeder distributed it anyway").

Thus, Plaintiff's apparent contention is that Reeder erred in not removing the outdated NCIC printout.[14]  The Court rejects this contention.

Plaintiff makes much of the fact that the FBI Identification Record contains certain restrictions on its use.  For example, the FBI Report advises that "A NEW COPY SHOULD BE REQUESTED WHEN NEEDED FOR SUBSEQUENT USE."  Plaintiff faults both Wilson and Reed for not requesting an updated NCIC report.  However, neither Reeder nor Wilson was "using" the record such that either had a duty (or even the authority) to update Plaintiff's PCSD personnel file.  Defendant Reeder was simply passing Plaintiff's file along so that Plaintiff could be considered for another position, with the Plaintiff's specific authorization.

Regardless of which of its various theories Plaintiff offers for what Defendant Reeder did wrong in connection with the FBI Identification Record, the Court holds as a matter of law that on this record Reeder may not be held liable for violating Plaintiff's federal rights under any theory.

### **State Law Claims against Reeder**

### **(1) Libel and Slander**

Arkansas law requires the following elements be proved to support a claim of defamation, whether by spoken word (slander) or written word (libel):

> (1) the defamatory nature of the statement of fact;
> (2) the statement's identification of or reference to the plaintiff;
> (3) publication of the statement by the defendant;
> (4) the defendant's fault in the publication;
> (5) the statement's falsity; and
> (6) damages.

*Dodson v. All-State Insurance Co.*, __ S.W.3d __ 2006 WL 564045 (March 9, 2006)

---

[14]  (Pl.'s response at ¶ 25, docket 50).

(citations omitted).

Reeder did not cause the FBI Identification Report to be included in Plaintiff's personnel file.  His act of providing Plaintiff's personnel file to Wilson pursuant to a signed release by the Plaintiff does not constitute a publication as a matter of law.  Further, Reeder may not be said to be at fault in providing the personnel file, since Plaintiff had essentially directed that this be done.

The Court concludes that Plaintiff's defamation claim against Reeder fails as a matter of law.

### (2) Arkansas Civil Rights Act

As the Court has already noted, Plaintiff may pursue both a federal § 1983 claim and a state law claim pursuant to the ACRA for Reeder's alleged termination of his employment for opposing Reeder as a candidate for public office.   Defendant Reeder has not briefed the issue of whether his handling of the FBI Identification Report violated the ACRA. Accordingly, the Court can not dismiss that claim.

Both Reeder and the Plaintiff have requested that the Court decline to exercise supplemental jurisdiction over any remaining state law claims.  The Court will oblige their request and will dismiss without prejudice Plaintiff's claim that Reeder violated the ACRA by his handling of the FBI Identification Report.

### B.      Claims against Defendant Randy Wilson

Plaintiff claims that "what [Wilson] did wrong was send the document disseminating my juvenile record to Standards."[15]   Plaintiff apparently also contends that Wilson erred by releasing his criminal history to the Mayor of Perryville.  The Court rejects both arguments.

---

[15]  (Pl.'s deposition, p. 53, Exh. A to Pl.'s Stmt. of Facts).

Wilson did not violate federal law by providing Standards with a copy of the FBI Identification Record or by sharing the information with the Mayor.  Wilson did not deny Plaintiff any property or liberty interest when he did so.  Plaintiff himself authorized Wilson to obtain and review Plaintiff's employment records. Wilson was therefore entitled to obtain and review Plaintiff's PCSD file.

Nor can Wilson be faulted for contacting Standards to determine the impact of the FBI Identification Record or for sending Standards a copy of the report.  Standards is empowered by state law to "[r]equire the submission of reports and information by law enforcement agencies within the state."  Ark. Code Ann. § 12-9-302(2).

The Court rejects Plaintiff's assertion that Chief Wilson acted in bad-faith.  To support this allegation, Plaintiff has offered only the fact that Wilson failed to advise Standards of the letter from Faulkner County indicating that it had found no criminal convictions for the Plaintiff.  There is no evidence that Wilson omitted the letter purposefully or that it would have made any difference if he had provided it.  The total record evidence will not permit a reasonable jury to conclude that Chief Wilson wanted to harm Plaintiff by contacting Standards and by omitting the Faulkner County letter.

This conclusion is further supported by Wilson's actions prior to contacting Standards.  Although Plaintiff has apparently abandoned this claim, at one point Plaintiff faulted Wilson for failing to advise Plaintiff that he had the opportunity to dispute the accuracy of the report, as required by federal regulations.  In fact, Chief Wilson provided Plaintiff with the equivalent of a "pre-termination name clearing hearing" when he called him to his office to advise him of the FBI Record contained in his personnel file and to discuss its implications.  When required as part of procedural due process, pre-adverse action notice

- 15 -

"need not be elaborate."   *Schleck v. Ramsey County*, 939 F.2d 638, 641-42 (8th Cir. 1991).

> "[A]ll that is required is that the employee have "notice of the charges . . ., an explanation of the employer's evidence, and an opportunity [for the employee] to present his side of the story."

*Winskowski v. City of Stephen*, 442 F.3d 1107, 1110 (2006)(citations omitted).   Thus, although technically no process was due under the Constitution, Plaintiff in fact was provided with such process.

Plaintiff was on notice that Byrd (not Reeder or Wilson) had failed to remove the FBI Identification Record from his personnel file.  He was further on notice that the presence of the FBI Identification Record might prevent him from being considered for the position of school resource officer.

The Mayor along with the City Council were responsible for hiring the school resource officer position Plaintiff sought.  The Mayor was authorized to receive and Chief Wilson was authorized to provide the FBI Identification Record for the reasons well stated in Wilson's Reply Brief.

Plaintiff's allegations are insufficient to permit a finding in his favor that Chief Wilson by his actions  violated any federal constitutional provision.

### State Law Claims against Wilson

Chief Wilson is entitled to statutory immunity from all state law claims in connection with Plaintiff's allegations.   Arkansas law provides:

> (1) An administrator of an employing agency who discloses information pursuant to this section is immune from civil liability for such disclosure or its consequences.
> (2) No employing agency shall be civilly liable for disclosure of information under this subchapter or performing any other duties under this subchapter.

Ark. Code Ann. § 12-9-602(d)(1) and (2).

An employing agency is defined under as "any state agency or any county, municipality, or other political subdivision of the state, or any agent thereof, which has constitutional or statutory authority to employ or appoint persons as law enforcement officers."   The evidence is undisputed that the City of Perryville is an employing agency within this definition and that Chief Wilson was acting as one of the administrators for the Perryville Police Department in evaluating Plaintiff's request for employment as a law enforcement officer.  Accordingly, Wilson is entitled to the immunity provided by Arkansas law.

### C.      Claims against Defendant Bob Satkowski

Mr. Satkowski is the Deputy Director of AOLES.  AOLES was created by statute for the purpose of training and maintaining standards on individuals employed in, or wishing to be employed in, law enforcement in the State of Arkansas.  See Ark. Code Ann. § 12-9-104. AOLES maintains records on approximately 37,000 officers.  In creating AOLES, Arkansas law enacted a provision immunizing the Commission on Law Enforcement Standards, its members, and its employees, from civil liability for disclosing information contained in officers' records.   See Ark. Code Ann. § 12-9-603(e).

Plaintiff has abandoned all federal claims against Mr. Satkowski except his official capacity claim for prospective injunctive relief and a name-clearing hearing.  Although the Plaintiff has not abandoned his state law claims against Mr. Satkowski, the Court finds that such claims must also be dismissed as a matter of law.  Plaintiff has failed to refute Satkowski's claim that he is entitled to statutory immunity from civil liability for any disclosures of information on Plaintiff maintained in AOLES' files.  See Ark. Code Ann. § 12-9-603(e).  Accordingly, Satkowski is entitled to judgment as a matter of law on Plaintiff's

state law claims of negligence, violation of the Arkansas Civil Rights Act, felony tort, and libel and slander.

For his remaining federal claim against Mr. Satkowski, Plaintiff claims that his procedural due process rights are being violated because of the procedure utilized by the AOLES for correcting its files.  It is undisputed that officers have an opportunity to correct their records on file with the AOLES.  However, AOLES' policy is to continue to maintain a copy of all records, even records that are subsequently shown to be inaccurate or untruthful. In other words, Plaintiff can correct his file at Standards to show that the FBI Identification Record falsely implies that he was convicted and served jail time for grand larceny and to show that he was never convicted of the crime for which he was arrested.  Both Plaintiff's correction and the FBI Identification Record would remain part of Plaintiff's file at Standards.

Plaintiff also complains that he was not provided "a name clearing" hearing.  This claim may be summarily disposed of because there is no evidence that Plaintiff to this date has attempted to comply with existing AOLE procedures for correcting an inaccurate record. Plaintiff states that he called Mr. Satkowski on numerous occasions, but his calls were not returned.  This is not enough.[16]   There is no evidence that Plaintiff has made any effort to contact anyone else at AOLE regarding this issue and his file contains no correspondence indicating that he has made any effort to rectify this situation with AOLE.

Assuming that Plaintiff Jones has a liberty or property interest that is entitled to procedural due process protection, Plaintiff's remaining constitutional claim against

---

[16]  Satkowski suffers from a serious health condition requiring a liver transplant, which is a possible explanation for the unreturned calls.  This is not to suggest that unreturned phone calls alone would ever constitute an adequate attempt to correct one's records with the AOLE.

Satkowski still fails.  AOLES took no action against Plaintiff to suspend or revoke his officer

certification.  Instead, Plaintiff's claim is premised on AOLES policy which caused the 2001

FBI Record to be maintained in the Plaintiff's file.  Plaintiff contends that the record should be

removed from his file and that AOLES should be prohibited from disseminating the record.

The Court holds that Plaintiff must formally attempt to correct his file with AOLES

before claiming that a procedure he failed to invoke was constitutionally inadequate.

"Nothing in our jurisprudence suggests that a government employee can legitimately sue for

deprivation of the right to a post-termination hearing where he never asserted the right before

suing for damages."  *Winskowski v. City of Stephen*, 442 F.3d 1107, 1111 (8th Cir. 2006).

The Court recognizes that the Plaintiff here seeks only injunctive or declaratory relief.

But, the underlying rationale still applies.  The Court can not consider whether AOLES'

alleged policy is constitutionally inadequate in its application when it has not been applied to

Plaintiff.

The Court concludes that AOLES' stated policy, as articulated by Mr. Satkowski

during his deposition, is not facially unconstitutional.  Mr. Satkowski testified during his

deposition as to what would have occurred if he had been informed that the FBI record in

Plaintiff's file was incorrect.  AOLES would keep the original NCIC record but "if a

countermanding document were to come in [to AOLES], [the new document] would certainly

be included in the file, and it's affect on a preceding documents would be noted on the

preceding document."  (Satkowski depo., p. 29 Exh. A to Satkowski's reply brief, docket 56).

AOLES has a procedure in place which would permit Plaintiff to correct the record to show

that he was never convicted of the crime for which he was charged.  The Court understands

that Plaintiff would prefer to erase any record that he was ever arrested.  His preference, while

understandable, does mean that AOLES' policy prohibiting the deletion of records from officer's files is unconstitutional.

Separate Defendant Satkowski is entitled to judgment as a matter of law on all claims asserted against him in the Plaintiff's Complaint.

### Qualified Immunity for Reeder and Wilson

Additionally and alternatively, to the extent either Defendant Reeder or Wilson[17] could be found to have done anything that would rise to the level of a constitutional transgression in connection with the claims related to the NCIC record,[18] each is entitled to qualified immunity.  It is important for public officials to be shielded from the burden of trial on insubstantial claims."  *Wright v. South Arkansas Regional Health Center, Inc.*, 800 F.2d 199, 202-03 (8th Cir. 1986).  "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004).

No bright lines have been crossed in this case.  No reasonable official would understand that the acts taken by Defendants Reeder and Wilson in reviewing, discussing, and sharing (with Standards and the Mayor) the FBI Identification Record would violate a clearly established constitutional right.

### CONCLUSION

For the reasons stated herein,

IT IS HEREBY ORDERED THAT Separate Defendant Bob Satkowski's Motion for Summary Judgment (Docket No. 24) be, and it is hereby, GRANTED.  The Complaint against

---

[17]  Plaintiff has dropped all individual capacity federal claims against Defendant Satkowski and thus, qualified immunity is inapplicable to the remaining official capacity claim.

[18]  Defendant Reeder has not moved for qualified immunity on the First Amendment retaliatory termination claim.

Mr. Satkowski is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED THAT Separate Defendant Randy Wilson's Motion for Summary Judgment (Docket No. 33) be, and it is hereby, GRANTED.  The Complaint against Mr. Wilson is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED THAT Separate Defendant Jim Reeder's Motion for Summary Judgment (Docket No. 30) be, and it is hereby, GRANTED IN PART and DENIED IN PART.  All of Plaintiff's federal claims against Reeder based on the dissemination of the FBI Report are DISMISSED WITH PREJUDICE.  The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim under the Arkansas Civil Rights Act against Reeder based on the dissemination of the FBI Report; that claim is therefore DISMISSED WITHOUT PREJUDICE.  Plaintiff's state law claim for libel and slander are DISMISSED WITH PREJUDICE.   Only Plaintiff's First Amendment and ACRA claims against Reeder in connection with Plaintiff's alleged unlawful termination remain for trial.

IT IS FURTHER ORDERED THAT Plaintiff William E. Jones' Motion for Relief to Certify to Arkansas Supreme Court (Docket No. 52) be, and it is hereby, DENIED.

IT IS SO ORDERED this 16th    day of January, 2007.

___/s/Garnett Thomas Eisele_____
UNITED STATES DISTRICT JUDGE